UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TOKIO MARINE SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| K&S ENGINEERS, INC., WISCONSIN CENTRAL LTD., NORTHERN ILLINOIS GAS COMPANY d/b/a NICOR GAS COMPANY, MICHELS CORPORATION, BURNS & MCDONNELL ENGINEERING COMPANY, INC., D'ESCOTO, INC., | ) ) ) ) ) ) ) ) | Case No.   3:19-cv-716 |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL**

Come now Plaintiff, TOKIO MARINE SPECIALTY INSURANCE COMPANY ("Tokio Marine"), by counsel, and for its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201(a) would respectfully show the Court the following:

**JURISDICTION AND VENUE**

1. Tokio Marine is a Pennsylvania company organized under the laws of the State of Pennsylvania, maintaining its principal place of business in Bala Cynwyd, Pennsylvania 19004. Tokio Marine is not a mutual insurance company. Thus, Tokio Marine is a citizen of the State of Pennsylvania for purposes of diversity jurisdiction.

2. K&S Engineers, Inc. ("K&S") is a Delaware corporation with its principal place of business in Highland, Indiana.  Thus, K&S is a citizen of the State of Indiana for purposes of diversity jurisdiction.

3. Wisconsin Central Ltd. ("Wisconsin Central") is a Delaware corporation and a common carrier by rail with its headquarters and principal place of business in Homewood, Illinois. Thus, Wisconsin Central is a citizen of the States of Delaware and Illinois for purposes of diversity jurisdiction.

4. Defendant Northern Illinois Gas Company d/b/a Nicor Gas Company ("Nicor") is an Illinois corporation with its principal place of business in Naperville, Illinois. Thus, Nicor is a citizen of the State of Illinois for purposes of diversity jurisdiction.

5. Defendant Michels Corporation ("Michels") is a Wisconsin corporation with its principal place of business in Brownsville, Wisconsin. Thus, Michels is a citizen of the State of Wisconsin for purposes of diversity jurisdiction.

6. Defendant Burns & McDonnell Engineering Company, Inc. ("Burns") is a Missouri corporation with its principal place of business in Kansas City, Missouri. Thus, Burns is a citizen of the State of Missouri for purposes of diversity jurisdiction.

7. Defendant d'Escoto, Inc. ("d'Escoto") is an Illinois corporation with its principal place of business in Chicago, Illinois. Thus, d'Escoto is a citizen of the State of Illinois for purposes of diversity jurisdiction.

8. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

9. This Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §2201. An actual and substantial controversy exists between the parties. By this action Plaintiff Tokio Marine seeks declarations that there is no coverage for

K&S in connection with an underlying lawsuit filed by Wisconsin Central against K&S and the other named defendants.

10. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391, because a substantial portion of the events and omissions giving rise to this cause of action, namely the availability of insurance coverage under a policy of insurance issued by Tokio Marine to K&S in the State of Indiana, occurred in this District and Division.

## FACTUAL ALLEGATIONS

*The Underlying Wisconsin Central Action*

11. On or about October 12, 2017, Wisconsin Central filed a lawsuit titled *Wisconsin Central Ltd. v. Northern Illinois Gas Company d/b/a Nicor Gas Company, et al.,* (the "Wisconsin Central Action") in the Circuit Court of the Twelfth Judicial Circuit, Will County, State of Illinois, cause number 17-L-888.

12. The Wisconsin Central Action was originally filed against only defendants Nicor and Michels.

13. On March 14, 2019, Michels filed a third-party complaint against K&S in the Wisconsin Central Action, asserting a claim of contribution against K&S, based upon Michels' contract with K&S to perform geotechnical exploration and preparation of a report in connection with the Nicor/Michels pipeline project. A true and correct copy of the Third-Party Complaint (w/out exhibits) is attached hereto as Exhibit "A."

14. On July 19, 2019, Wisconsin Central filed a Second Amended Complaint, which was updated to add K&S, Burns, and d'Escoto as defendants. This Second Amended Complaint is currently the operative pleading in the Wisconsin Central Action. A true and correct copy of

the Second Amended Complaint in the Wisconsin Central Action is attached hereto as Exhibit "B."

15. The Wisconsin Central Action arises out of an incident that occurred on June 30, 2017, whereby a Wisconsin Central train derailed at a railroad crossing located in Plainfield, Illinois, at mile post 10.3, resulting in damage to numerous train tank cars and the spill of approximately 45,000 gallons of crude oil into the environment.

16. According to the Second Amended Complaint in the Wisconsin Central Action, Nicor (a natural gas pipeline facility owner and public gas utility) had contracted with Michels (a pipeline construction company and horizontal drilling entity) for the replacement and renewal of Nicor's natural gas pipeline throughout Illinois.

17. According to the Second Amended Complaint in the Wisconsin Central Action, at the time of the incident, Michels was conducting work on Phase V of the project, which involved replacing approximately 6.8 miles of pipeline in Will County, Illinois, a portion of which crossed under Wisconsin Central's train tracks.

18. According to the Second Amended Complaint in the Wisconsin Central Action, the drilling/pipe replacement work allegedly caused damage and weakening to the train track structure and a sinkhole to form underneath Wisconsin Central's tracks, which resulted in the June 30, 2017, train derailment.

19. In both the Second Amended Complaint and Michels' Third-Party Complaint, it is alleged that on June 30, 2016, K&S prepared a "Report of Geotechnical Exploration Aux Sable Line Replacement – Phase V" (the "K&S Report"), which it provided to Nicor and Michels.

20. Both the Second Amended Complaint and Third-Party Complaint allege that K&S failed to perform its duties "in a good, safe, and workman like manner and with reasonable care

to ensure its geotechnical exploration was accurate, complete, and consistent with standards in the field of geotechnical engineering."

21. Specifically, Both the Second Amended Complaint and Third-Party Complaint allege that K&S was negligent or otherwise breached its duties in the following respects:

> a) K&S failed to take any soil bores on the south and west side (the "coming-inside") of the tracks relative to the bore;
>
> b) K&S took only a single bore on the north and west side (the "going awayside") of the tracks that was approximately 300 feet away from the path of the pipeline, which was too far away to properly identify the soil conditions where the bore would be performed;
>
> c) K&S failed to take any soil bores within the railroad embankment itself;
>
> d) K&S failed to properly identify the layer of soil where the pipeline would be installed;
>
> e) K&S failed to properly identify the water table and the level of ground water that would be present at the crossing site; and
>
> f) K&S was otherwise careless and negligent in its work.

(See, Exs. A, and B)

22. Wisconsin Central has asserted claims of breach of contract, vicarious liability, negligence, and declaratory judgment against Nicor in the Wisconsin Central Action.

23. Wisconsin Central has asserted claims of negligence against K&S, Michels, Burns, d'Escoto in the Wisconsin Central Action.

24. Wisconsin Central claims that it has suffered damage in excess of $10 million associated with responding to and remediating the crude oil spill, repair and replacement of the train tracks in the area, and the repair and/or replacement of certain tank cars damaged in the derailment.

### *The Tokio Marine Policies*

25. Tokio Marine issued commercial lines policy number PPK1640137 to K&S for the period April 15, 2017, to April 15, 2018 (the "Primary Policy"). A true and correct copy of the Primary Policy is attached hereto as Exhibit "C."

26. The Primary Policy provides, in pertinent part, commercial general liability coverage, which covers, in general, the insured's liability for "bodily injury" or "property damage" caused by an "occurrence," and which occurs during the policy period.

27. Tokio Marine also issued an excess liability insurance policy number PUB580368 to K&S for the period of April 15, 2017, to April 15, 2018 (the "Excess Policy"). A true and correct copy of the Excess Policy is attached hereto as Exhibit "D."

28. The Excess Policy provides coverage for the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which the Excess Policy applies.

29. In general, the Excess Policy follows "the same provisions, exclusions and limitations that are contained in" the underlying Primary Policy, and so certain exclusions referenced in this Complaint will apply equally to the Primary Policy and Excess Policy, collectively referred to hereafter as the "Policies."

30. The Policies are subject to an endorsement titled "EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY," which provides as follows:

> **EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph 3. below, professional services include:
a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor. (Ex. C)

31. The Policies are also subject to an endorsement titled "EXCLUSION, TESTING OR CONSULTING ERRORS AND OMISSIONS," which provides as follows:

**EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

{0017307/0066/02000644 v1}       7

**1.** An error, omission, defect or deficiency in:
**a.** Any test performed; or
**b.** An evaluation, a consultation or advice given;
by or on behalf of any insured;

**2.** The reporting of or reliance upon any such test, evaluation, consultation or advice; or

**3.** An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1.**, **2.** or **3.**  (Ex. C)

32. The Primary Policy also contains an endorsement titled "EXCLUSION – TOTAL POLLUTION," which provides as follows:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
> TOTAL POLLUTION EXCLUSION ENDORSEMENT
>
> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion f. under Paragraph 2., Exclusions of Section I-Coverage A-Bodily Injury And Property Damage Liability is replaced by the following :
> This insurance does not apply to: f. Pollution
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
> (2) Any loss, cost or expense arising out of any:
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for , monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants". (Ex. C)

33. The Excess Policy contains a similar Pollution Exclusion, which provides as follows:

> **f. Pollution**
> **(1)** "Injury or damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
> Paragraph **f.(1)** does not apply to "injury or damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:
> **(a**) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or
> **(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effect of "pollutants."
>
> For the purposes of this insurance, hostile fire means one that becomes uncontrollable or breaks out from where it is intended to be.
>
> **(2)** Any loss, cost or expense arising out of any:
> **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or
> **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.
>
> **(3)** Any obligations to share damages with or indemnity another party who must pay damages because of "injury or damage" relating to "pollutants."
>
> **(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Paragraphs **(1)**, **(2)** or **(3)** above.
>
> This exclusion applies whether or not such "pollutants" have any function in your business, operations, premises, site or location. (Ex. D)

34. The Policies each define a "pollutant," in pertinent part, as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

35. Tokio Marine received notice of the Wisconsin Central Action and the claims against K&S on June 4, 2019.

36. By letter dated August 15, 2019, Tokio Marine, by counsel, denied coverage to K&S for the Wisconsin Central Action, based upon the Policies' exclusions for Professional Services and Testing or Consulting Errors and Omissions. Tokio Marine also reserved its rights with regard to the application of the Total Pollution Exclusion in the Primary Policy and the Pollution Exclusion in the Excess Policy. Tokio Marine also advised K&S that it would be filing the instant declaratory judgment action. A true and correct copy of the August 15, 2019, letter is attached hereto as Exhibit "E."

## COUNT I: DECLARATORY JUDGMENT

37. Tokio Marine incorporates by reference the allegations in paragraphs 1 through 36 as if fully set forth herein.

38. The claims and allegations against K&S in the Wisconsin Central Action are not covered under the Policies, because they are excluded under Professional Services Exclusion.

39. Specifically, the Second Amended Complaint and Third-Party Complaint allege that K&S undertook geotechnical exploration and prepared the K&S Report in June 2016 in connection with the pipeline project.

40. As such, K&S's liability in the Wisconsin Central Action, to the extent there is any, arises out of K&S's rendering of or failure to render professional services, including, but not limited to: (1) providing engineering, architectural, or surveying services in K&S's capacity as

an engineer, architect, or surveyor; and (2) preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field order, change orders or drawings and specifications.

41.  All such claims in the Wisconsin Central Action are barred by the Professional Services Exclusion in the Policies.

42.  The claims and allegations against K&S in the Wisconsin Central Action are also not covered under the Policies because they are excluded under Errors and Omissions Exclusion.

43.  Based on the allegations in the Second Amended Complaint and Third-Party Complaint, K&S's liability in the Wisconsin Central Action, to the extent there is any, arises out of K&S's errors, omissions, defects, or deficiencies in either tests performed; an evaluation, consultation, or advice given; reporting of, or reliance upon any such test, evaluation, consultation, or advice; and/or in the experimental data or K&S's interpretation of that data.

44.  All such claims in the Wisconsin Central Action are barred by the Errors and Omissions Exclusion in the Policies.

45.  Further, to the extent the Wisconsin Central Action seeks damages for "property damage" resulting from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as defined by the Policies, such damages are not covered under the Policies, because they are barred by the Total Pollution Exclusion in the Primary Policy and the Pollution Exclusion in the Excess Policy.

46.  Because there is no coverage under the Policies for the claims against K&S in the Wisconsin Central Action, Tokio Marine has no duty to defend K&S in the Wisconsin Central Action.

47. Because there is no coverage under the Policies for the claims against K&S in the Wisconsin Central Action, Tokio Marine has no duty to indemnify K&S, nor pay any settlement, judgment, verdict, or award in the Wisconsin Central Action.

48. Defendants Wisconsin Central, as the plaintiff in the Wisconsin Central Action; Michels, as a named defendant and the third-party plaintiff in the Wisconsin Central Action; and Nicor, Burns, and d'Escoto, as named defendants in the Wisconsin Central Action, are named herein as nominal but indispensable parties to this litigation, and should be bound by any determination with regard to insurance coverage under the Policy made herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tokio Marine Specialty Insurance Company ("Tokio Marine") prays that this Court enter judgment as follows:

1. Declaring that Tokio Marine has no obligation to defend or indemnify K&S Engineers, Inc., or to pay any judgment, verdict, award, or settlement on its behalf, for any liability or damages alleged in the Wisconsin Central Action;

2. Declaring that Michels, Nicor, Burns, and d'Escoto, are equally bound by the determination and judgment of the Court in this declaratory judgment action; and

3. For all other proper relief in the premises.

                        LEWIS WAGNER, LLP

                        By  /s/ Meghan E. Ruesch
                            MEGHAN E. RUESCH, #32473-49
                            MICHAEL R. GIORDANO, # 31317-53
                            LEWIS WAGNER, LLP
                            501 Indiana Avenue, Suite 200
                            Indianapolis, IN  46202
                            Phone: (317) 237-0500; FAX:  (317) 630-2790
                            mruesch@lewiswagner.com
                            mgiordano@lewiswagner.com
                            *Counsel for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, by counsel, demands that this case be tried by a jury.

                LEWIS WAGNER, LLP

By /s/ Meghan E. Ruesch
    MEGHAN E. RUESCH, #32473-49
    MICHAEL R. GIORDANO, # 31317-53
    LEWIS WAGNER, LLP
    501 Indiana Avenue, Suite 200
    Indianapolis, IN  46202
    Phone: (317) 237-0500; FAX:  (317) 630-2790
    mruesch@lewiswagner.com
    mgiordano@lewiswagner.com
    *Counsel for Plaintiff*